UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

VICTOR C. LUNSFORD,

        Plaintiff,

        v.                                                      Case No. 11-C-0442

MICHAEL J. ASTRUE,

        Defendant.

## DECISION AND ORDER REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER

Victor Lunsford filed his second appeal of the final decision of the Commissioner denying his application for a period of disability and disability insurance benefits. He first applied in 2000, but the claim was denied after a hearing. (Tr. 747.) Lunsford reapplied on July 17, 2003, but was denied at the administrative level and did not request a hearing. (Tr. 789-800). On July 20, 2006, Lunsford filed the instant application, alleging disability since February 10, 2000, due to a variety of impairments, including diabetes, dermatitis, celiac disease, heart disease, depression, degenerative disc disease and carpal tunnel syndrome. (Tr. 62, 73.) After his application was denied at the initial and reconsideration stage, Lunsford requested a hearing and amended the onset date to September 8, 2002. (Tr. 771-772).

At the hearing, the ALJ concluded that the doctrine of res judicata precluded a finding of disability prior to December 31, 2003, which was the date of the last denial. (Tr. 15, 797). He found that Lunsford's back impairment, coronary artery disease, and depression were severe impairments. (Tr. 15.) In addition, the ALJ determined that Lunsford retained the ability to perform light work except that he was precluded from more

than occasional stooping, bending, or crouching, and from any climbing, crawling, or kneeling. (Tr. 18.) Lunsford required a sit/stand option so that he did not have to stand for more than 30 continuous minutes, and was seriously limited but not precluded from understanding, remembering, and carrying out detailed and complex instructions. (*Id*.) Although Lunsford could not perform past relevant work, the Vocational Expert testified that an individual with the claimant's age, education, work experience, and residual functional capacity could perform occupations such as timekeeper, mail sorter, greeter/receptionist, office worker, inspector, sorter and hand packager. (Tr. 22.) Hence, the ALJ concluded that Lunsford was not disabled at any time from September 8, 2002, through March 31, 2005, his date last insured. (Tr. 22.)

Following a December 2, 2008, hearing, the ALJ denied Lunsford's claim and the Appeals Council denied review. United States District Judge Lynn Adelman reversed and remanded for rehearing on multiple grounds. *Lunsford v. Astrue*, Case No. 09-C-464 (E.D. Wis. Apr. 2, 2010). Specifically, Judge Adelman found that the ALJ failed to properly address Lunsford's diabetes and carpal tunnel syndrome and understated Lunsford's cardiac condition, ignored Dr. Gucfa's treating source report and rejected the report of Dr. Simon without an adequate explanation, and erred in evaluating Lunsford's credibility by resting on significant factual errors and an incomplete review of the record.

New evidence was submitted and Lunsford testified at the rehearing on February 1, 2011. (Tr. 807, 1230.) This time, the ALJ found additional severe impairments, including carpal tunnel syndrome and diabetes mellitus. (Tr. 807.) The ALJ concluded that the evidence was "not strongly persuasive in showing any very severe psychological impairment during the insured period" but noted the district court's "implicit acceptance of

a severe mental disorder and testimony taken during the administrative hearing from Dr. Armentrout." Consequently, he found the evidence to show a mildly to moderately severe depressive disorder during that period. (Tr. 809.) The ALJ further found that many of Lunsford's complaints were neither cited in nor corroborated by the clinical evidence and noted "profound inconsistencies" with respect to the extent to which the intensity, persistence, and limiting effects of his symptoms limit daily functioning. (Tr. 813.) The following jobs were found to be available: video surveillance monitoring jobs, machine tender jobs, conveyor belt sorting jobs, laminating machine operator jobs, and escort driving jobs. (Tr. 817.) Therefore, the ALJ determined that Lunsford was not disabled any time from September 8, 2002, through March 31, 2005, his date last insured. (Tr. 818.)

On appeal, this court may reverse an ALJ's determination of disability only if the decision is not supported by substantial evidence or relies on a legal error. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must review the record as a whole but cannot substitute its judgment for that of the ALJ "by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Jens v. Barnhart,* 347 F.3d 209, 212 (7th Cir. 2003). Errors of law are not entitled to deference, and an ALJ who commits an error of law must be reversed "without regard to the volume of evidence in support of the factual findings." *Binion*, 108 F.3d at 782.

Returning to the district court, Lunsford revisits the arguments he raised in the first appeal: (1) the ALJ failed to properly evaluate the treating source statements of Drs. Gucfa, Simon, Sobolewski, Fechter, George, and Veale; (2) failed to properly assess his

3

(Lunsford's) credibility; and (3) failed to consider the severity of all of his impairments. As a result of these alleged errors, Lunsford maintains that the ALJ's conclusions regarding his residual functional capacity ("RFC") are not supported by substantial evidence and that the Commissioner did not meet his step-five burden.

As an initial matter, a treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ may discount a treating physician's medical opinion if it "'is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'" *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir.2004)).

Judge Adelman remanded the ALJ's first decision, in part, because the ALJ never mentioned Dr. Gucfa's July 2006 report setting forth serious limitations in Lunsford's ability to remember and carry out simple instructions, maintain attention, and deal with normal work stress. Dr. Gucfa also opined that Lunsford would be absent from work more than four days per month based on his impairments.

After the appeal was remanded to the Commissioner, the ALJ issued his second decision and cited to the report:

> The District Court cited a failure to fully consider and evaluate the limitations assessed in Dr. Jason Gucfa's psychological report of July 26, 2006. There is some difficulty in performing such an evaluation insofar as Dr. Gucfa stated that he had only seen the claimant on two occasions since then and had never seen the claimant at all until after the claimant's insured status expired. Moreover, he wrote himself that he was unable to state when any of the limitations he assessed would have begun to apply while he felt that the claimant had been functioning at a Global Assessment level of 70 within the prior year.

4

(Tr. 809.) Later, the ALJ referred to Dr. Gucfa's statement that he was unsure whether any limitations cited would have applied during the insured period and that he believed the claimant was functioning at a significantly higher level within the previous year. (Tr. 815.)

According to Lunsford, this analysis fails because Dr. Gucfa saw him on three occasions - not two - and the ALJ failed to discuss the limitations that were supportive of Lunsford's claims. He further argues that the ALJ should have re-contacted Dr. Gucfa for clarification if there was uncertainty about whether the report applied during the relevant time period. In making these arguments, Lunsford cites dicta from the prior district court decision such as a statement that a retrospective diagnosis based on corroborating evidence is sufficient and that there is corroborating evidence of mental illness, including a prescription for Paxil.

Dr. Gucfa's report indicates that he first saw Lunsford on January 23, 2006, and saw him twice after that date. That the ALJ referenced the two subsequent visits does not change the fact that initially Dr. Gucfa evaluated Lunsford "after the claimant's insured status expired" and that he believed that Lunsford was functioning at a higher level in the previous year. (Tr. 809, 814.) In addition, the ALJ articulated his concern that the evidence was not "strongly persuasive in showing any very severe psychological impairment during the insured period" but found that the evidence was sufficient to show a mildly to moderately severe depressive order based on the district court's "implicit acceptance of a severe mental disorder and testimony taken during the administrative hearing from Dr. Armentrout." (Tr. 809.) Indeed, the ALJ commented on a prescription of Paxil on December 14, 2000 - prior to the onset date -- and Lunsford's unilateral decision to

5

discontinue the drug because it decreased his sex drive and that he was not referred for psychiatric evaluation until January of 2006. (Tr. 808.)

It is true that an ALJ may recontact a treating physician when the evidence received "is inadequate for [him] to determine whether [the claimant is] disabled. *Skarbek,* 390 F.3d at 503); see also SSR 96–5p (stating if "the adjudicator cannot ascertain the basis of the [treating source's] opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."). However, Dr. Gucfa's report states unequivocally that he is unable to predict the earliest date that his description of the limitations applied. (Tr. 483.) Contacting him on this issue would not have provided further clarification. In the absence of any conflict within Dr. Gucfa's report or anything indicating that Dr. Gucfa possessed additional information that did not appear within the report, the court will not find that the ALJ had a duty to recontact Dr. Gucfa. The ALJ adequately explained the consideration given to the report and appears to have taken account of the supportive evidence when finding Lunsford seriously limited but not precluded from understanding, remembering and carrying out detailed or complex instructions. (Tr. 812.)

Similarly, the ALJ referred to and rejected the October 23, 2006, report of Dr. Simon who "had never seen the claimant until December 19, 2005, about ten days before the expiration of his insured status." Elsewhere in the decision, the ALJ commented on the absence of any clinical evidence of end organ damage, retinopathy, or significant neuropathy within the relevant period, but at the same time found that the diabetic neuropathy amounted to a severe impairment based on reports of subjective diminishment of sensation. (Tr. 809.)

6

Specifically, the ALJ rejected the opinions of Dr. Simon for two reasons: (1) Dr. Simon did not see Lunsford until a few days before his disability insured status expired and she did not complete any functional assessment until October 23, 2006; and (2) Lunsford said that he could lift up to 25 pounds while Dr. Simon said he could not lift. Dr. Simon's assessment, according to the ALJ, had limitations so extreme as to "strain credulity:"[1]

> Dr. Simon says that the claimant cannot lift anything, cannot twist, stoop(bend), crouch/squat, and climb ladders or stairs. Also, she states that he cannot grasp, turn, or twist objects, perform fine manipulation, or reach with his arms. Also, she states that he should avoid all exposure to extreme heat, extreme cold, and every environmental factor listed on the form. Such extreme limitations are not supported by objective clinical evidence in the record.

(Tr. 815.) Additionally, the ALJ noted that Dr. Simon's report appeared to be predicated upon the subjective complaints and self-reports rather than clinical signs, symptoms, or other medical documentation. (Tr. 815.) Hence, the court finds that the ALJ has minimally articulated his reasons for finding Dr. Simon's report not persuasive.

More troubling is the ALJ's treatment of Drs. Veale, Sobolewski, and George, and the Commissioner's failure to address Lunsford's arguments. At page 5 of the February 25, 2011, decision and page 808 of the record, the ALJ observed that Dr. Veale "specifically refused to suggest that the claim is under any physical limitations from any musculoskeletal condition." That is not accurate. Dr. Veale stated that he was unable to answer questions regarding the limitations because he had not completed a physical impairment study. While Lunsford admits that Dr. Veale was not a treating physician but

---

[1] Lunsford maintains that this language is not found in the decision. However, at page 11 of the decision and page 814 of the record, the ALJ states "This assessment has limitations so extreme that they strain credulity." The ALJ added that "such extreme limitations are not supported by objective clinical evidence in the record." (Tr. 814.)

7

rather a chiropractor who continued to provide occasional chiropractic adjustments, the ALJ referenced the report just prior to discrediting Dr. George's report as inconsistent with the medical reports "as cited above." (Tr. 807.) It is not clear whether the ALJ relied on his erroneous statement.

In addition, the court shares Judge Adelman's concerns regarding the reference to Dr. Sobolewski. During the briefing on the first appeal, the Commissioner cited Dr. Sobolewski's report to justify the ALJ's discrediting of Drs. Gucfa and Simon. However, the ALJ did not cite the records from Dr. Sobolewski to reject the treating source reports but rather for the purpose of evaluating Lunsford's credibility. Indeed, the ALJ wrote:

> With regard to other opinions, Dr. Victor Sobolewski noted that the claimant was "stable" in July 2003, only using an occasional Percocet for pain (Exhibits B7F and B10F). This is not consistent with the level of pain reported by the claimant.

(Tr. 20.) Following the remand, the ALJ used almost identical language when discussing Dr. Sobolewski:

> With regard to other opinions, Dr. Victor Sobolewski noted that the claimant was "stable" in July 2003, only using an occasional Percocet for pain (Exhibits B7F and B10F). This is not consistent with the level of pain reported by the claimant.

However, there is no mention of Dr. Sobolewski's notes containing additional, more favorable language:

> The patient is here to discuss his disabilities which are multiple. He has significant coronary artery disease with 2 MIs in the recent past, has had 1 in the most recent past. He has chronic back pain and many disabling conditions. He has filled out his form for disability and I told him when he contacts them to make sure he makes it available to them that I am his treating physician and that any forms that need to be filled out, I would be glad to take care of those for him. Right now he is stable on his current medical regimen. He uses occasional Percocet, maybe 1 or 2 every 3 to 4 days. He still has several left from his prescription from April, but they do

8

> help on bad days. We will continue to monitor his condition and would be glad to fill out paperwork for him.

(Tr. 277.) At a minimum, the reference to "stable" was an impermissible cherry picking of the doctor's notes, *see Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009), and does not provide a logical bridge between the evidence and his conclusion regarding pain.

Lunsford also challenges the ALJ's failure to evaluate properly the report of Dr. George who provided a statement on October 21, 2010, but opined that the earliest day that the description of the symptoms and limitations applied was 2001. The report identifies the following diagnoses: diabetes type 2, peripheral neuropathy, sleep apnea, coronary artery disease, bypass grafting, hypertension, chronic low back pain due to disc disease, and celiac disease, with a prognosis that is "fair to poor." (Tr. 1163.) Dr. George stated that Lunsford is not a malingerer, and that he frequently experiences pain severe enough to interfere with concentration. (Tr. 1165.) In addition, he has a severe limitation in his ability to work with stress, can walk one block without rest, sit for ten minutes, and must use a cane. (T. 1164-1166.) Dr. George found significant limitations with reaching, handling, and fingering, and stated that Lunsford would be absent about three times a month. In an eight-hour day, Dr. George opined, Lunsford could grasp turn, and twist objects approximately five percent of the time and reach overhead about ten percent of the time. (Tr. 1166.)

The ALJ explained that Dr. George's report was not given measurable weight with regard to the insured period because Dr. George first saw Lunsford in 2008. In addition, the ALJ observed that Dr. George's opinion that Lunsford could not walk without a cane, could not lift as much as ten pounds, and "could not sit, stand, or walk for as much as two

9

hours during an eight-hour day" was inconsistent with unspecified "other medical reports." (Tr. 808.)

Even though Dr. George first saw Lunsford after the date of last insured, the ALJ found corroborating evidence of the severe coronary and back disorders *prior to* December 31, 2005. Moreover, the ALJ did not identify how Dr. George's report was inconsistent with the other medical reports or even what reports he was referring to in finding the inconsistency. Instead, he cited Exhibit B40F, which is Dr. George's report.

Next, Lunsford believes that the ALJ erred his credibility assessment. Because the ALJ is "in the best position to determine a witness's truthfulness, the court will not overturn an ALJ's credibility determination unless it is patently wrong." *Skarbek*, 390 F.3d at 504–05 (7th Cir. 2004). When evaluating credibility, the ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). On review, the court shall "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Judge Adelman found "significant errors and omissions" in this portion of the decision inasmuch as: (1) the ALJ discerned no evidence that Lunsford used a cane prior to the date last insured when there were physical therapy notes to the contrary; (2) the ALJ relied on Lunsford's August 7, 2006, functioning report for the proposition that Lunsford could do more than he was willing to admit, but the ALJ did not explain how the modest daily activities in the report contradicted his claim of disability; and (3) the ALJ relied on Lunsford's statement to Dr. Fechter that he did not want to work anymore but failed to consider Lunsford's attempt to correct the record.

10

On remand, the ALJ never discussed Lunsford's testimony from either hearing or otherwise explain how Lunsford's statements regarding activities contradicted the disability claim. On February 1, 2011, Lunsford testified that he stopped working in 2000 following a heart attack and that in 2004 he had three stents in his heart. (Tr. 1235.) He also testified that in 2004 he had difficulty breathing and doing any activity for more than five or ten minutes. (Tr. 1236.) Lunsford cited his chronic back pain, use of a cane, limitations on the use of his hands, and numbing of the feet. (Tr. 1239.) Moreover, he testified regarding his medications and limited daily activities in 2004, lack of hobbies and limited interaction with other people. It is not clear that any of this testimony was considered as required by the regulations.

In addition, the ALJ relied upon the same boilerplate language that has been the subject of many decisions in this circuit:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 814.) This language has been criticized as unhelpful, and worse, as implying "that ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). It further contradicts an earlier statement in the decision that it "is simply not shown that there is an underlying medically determinable physical impairment(s) - i.e., and impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques - that could reasonably

11

be expected to produce the claimant's reported levels of pain or other symptoms." (Tr. 813.)

As a final matter, the court is satisfied that the ALJ properly considered the cardiac impairments, diabetes, and carpal tunnel properly in finding them to be severe impairments. However, on remand, the ALJ should revisit the step-five determination to the extent that it is undermined by the errors and evidence discussed above. Now, therefore,

IT IS ORDERED that the decision of the Commissioner is reversed.

IT IS FURTHER ORDERED that this case is remanded for a further hearing consistent with this decision.

IT IS FURTHER ORDERED that this case is dismissed.

Dated at Milwaukee, Wisconsin, this 21st day of September, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE